James T. McDermott, OSB 933594
Email: jmcdermott@balljanik.com
Dwain M. Clifford, OSB 025074
Email: dclifford@balljanik.com
Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Tel: (503) 228-2525
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CAMBIA HEALTH SOLUTIONS, INC., REGENCE BLUECROSS AND BLUESHIELD OF OREGON, REGENCE BLUESHIELD OF IDAHO, INC., REGENCE BLUECROSS AND BLUESHIELD OF UTAH, and REGENCE BLUESHIELD,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Cambia Health Solutions, Inc., Regence BlueCross and BlueShield of Oregon, Regence BlueShield of Idaho, Inc., Regence BlueCross and Blue Shield of Utah, and Regence BlueShield (together, "Cambia"), by their counsel, assert the following claims against defendant Atlantic Specialty Insurance Company ("Atlantic Specialty") and allege:

**NATURE OF ACTION**

1. Cambia, a health-insurance provider, purchased "errors and omissions" liability coverage from various insurers, building a tower consisting of a primary policy and several layers of

excess coverage. Defendant Atlantic Specialty was one of those excess insurers, providing a second layer excess "follow form" liability policy to Cambia with $10 million in limits. Cambia was sued for alleged antitrust violations, which squarely fall within the coverage terms of the primary policy and, accordingly, all of the "follow form" excess policies, including the policy issued by Atlantic Specialty. Cambia has negotiated a settlement of the claims against it and obtained coverage settlements from every insurer except one: Atlantic Specialty. Accordingly, Cambia now brings this insurance-coverage action to compel Atlantic Specialty to acknowledge and pay Cambia's covered losses.

## PARTIES

2.      Plaintiff Cambia Health Solutions, Inc. is incorporated under the laws of the State of Oregon and maintains its principal place of business at 100 SW Market Street, Portland, Oregon 97201, and is the parent company of Regence BlueCross and BlueShield of Oregon, Regence BlueCross and BlueShield of Utah, Regence BlueShield of Idaho, Inc. and Regence BlueShield. Cambia Health Solutions, Inc., together with its affiliated companies, provides health insurance solutions to individuals and families in the United States.

3.      Plaintiff Regence BlueShield of Idaho, Inc. ("RBSI") is an Idaho corporation and is a related and affiliated company controlled by Cambia Health Solutions, Inc. RBSI has its principal place of business in Lewiston, Idaho, and is an independent licensee of the Blue Cross and Blue Shield Association. RBSI provides a full spectrum of health care plans and services to approximately 140,085 members in Idaho.

4.      Plaintiff Regence BlueCross and BlueShield of Oregon ("BCBS of Oregon") is an Oregon corporation and is a wholly-owned subsidiary of Cambia Health Solutions, Inc. BCBS of Oregon has its principal place of business in Portland, Oregon. BCBS of Oregon provides a full spectrum of health care plans and services to approximately 755,691 members in Oregon and Clark County, Washington.

5.      Plaintiff Regence BlueCross and Blue Shield of Utah ("BCBS of Utah") is a Utah corporation and is a wholly-owned subsidiary of Cambia Health Solutions, Inc. BCBS of Utah

has its principal place of business in Salt Lake City, Utah. BCBS of Utah provides a full spectrum of health care plans and services to approximately 490,277 members in Utah.

6. Plaintiff Regence BlueShield ("RBS") is a Washington corporation and is a wholly-owned subsidiary of Cambia Health Solutions, Inc. RBS has its principal place of business in Seattle, Washington. RBS provides a full spectrum of health care plans and services to approximately 1,037,193 members in Washington.

7. Defendant Atlantic Specialty, upon information and belief, is incorporated under the laws of the State of New York and maintains its principal place of business at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

## JURISDICTION AND VENUE

8. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action involves a dispute between citizens of different states.

9. Venue properly rests in this Court pursuant to 28 U.S.C. § 1391.

10. This action is commenced, in part, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

## FACTUAL ALLEGATIONS

I. **The Blue Cross Blue Shield Plans**

11. More than 80 years ago, the first Blue Cross Plans began with local hospitals, while Blue Shield Plans were developed in conjunction with medical societies (together, "Blue Plans").

12. Blue Plans provided subscribers with indemnity coverage for healthcare services, alleviating economic fears about medical events, and gave hospitals and doctors assurances that they would be paid.

13. The Blue Cross and Blue Shield organizations merged in 1982 to form the Blue Cross and Blue Shield Association ("Association").

14. The Blue System now consists of the Association and several independent licensees that operate under the familiar Blue Cross and Blue Shield trademarks in the United States.

15. Cambia, or Cambia's predecessor companies, began delivering a personalized healthcare experience to its customers over 100 years ago, and Cambia currently provides insurance to more than 2.2 million people in the Pacific Northwest, furthering its goal of transforming healthcare to make it more affordable and understandable.

16. Cambia generates nearly 9,100 regional jobs and is responsible for generating $1.2 billion in regional economic activity.

17. In March 2021, Cambia was recognized for the fourth year in a row as one of the World's Most Ethical Companies.

## II. Nature of the Underlying Action

18. Beginning in 2012, numerous class actions were filed against the Blue Plans and the Association alleging violations of antitrust laws.

19. Cambia was named a defendant in 2013 and timely reported the claims to Atlantic Specialty during the Policy Period set forth in the Policy.

20. In December 2012, over eight years ago, the Judicial Panel on Multidistrict Litigation consolidated and transferred more than 40 of these actions to the United States District Court for the Northern District of Alabama, creating the MDL litigation styled *In Re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "Antitrust Litigation").

21. The Antitrust Litigation is separated into two tracks: (1) the "Subscriber" track, and (2) the "Provider" track.

22. The term "Subscriber" refers to an individual who is covered under a health insurance plan issued by a Blue Plan.

23. The term "Provider" refers to any provider of medical services, including medical doctors, osteopaths, chiropractors, hospitals, ambulatory surgical centers, and urgent care centers. Providers, in essence, can include any individuals or organizations that provide health care services.

24. The Subscribers' and Providers' initial consolidated pleadings were filed on July 1, 2013. The Subscriber Track Consolidated Class Action Complaint is attached hereto as Exhibit A. The Provider Track Consolidated Amended Complaint is attached hereto as Exhibit B.

25. In November 2020, the Subscribers filed a Fourth Amended Consolidated Class Action Complaint (the "Subscriber Consolidated Fourth Amended Complaint") against the Blue Plans, including Cambia, and the Association. A copy of the Subscriber Consolidated Fourth Amended Complaint is attached hereto as Exhibit C.

26. In April 2017, the Providers filed a Consolidated Fourth Amended Complaint (the "Provider Consolidated Fourth Amended Complaint") against the Blue Plans, including Cambia, and the Association. A copy of the Provider Consolidated Fourth Amended Complaint is attached hereto as Exhibit D.

27. The Subscribers and Providers allege, among other things, that the Blue Plans, including Cambia, violated federal antitrust laws and engaged in price fixing and/or anticompetitive activities.

28. The Antitrust Litigation is a massive multi-district litigation that has been pending for over eight years, involves over 2,600 docket entries, and has been mediated over the course of five years.

29. The Subscribers allege that tens of millions of class members are entitled to monetary damages between $18.6 billion and $36.1 billion.

### III. The Insurance Policy

30. Atlantic Specialty issued the Managed Care Errors and Omissions Follow Form Excess Policy to Cambia, policy number MCX-1789-13, effective January 1, 2013 through January 1, 2014 ("Policy"). A copy of the Policy is attached hereto as Exhibit E.

31. The limit of liability of the Policy is $10 million per claim and in the aggregate.

32. The Policy is part of a comprehensive insurance program designed to protect Cambia from financial harm that provides both errors and omissions liability ("E&O") coverage and directors and officers liability ("D&O") coverage as follows:

|  | **Errors & Omissions** | **Directors & Officers** |
|---|---|---|
| 4th Excess | Ironshore Insurance Services, LLC | |
| 3rd Excess | Lexington Insurance Company | |
| 2nd Excess | Atlantic Specialty Insurance Company | Federal Insurance Company |
| 1st Excess | Illinois Union Insurance Company | ACE American Insurance Company |
| Primary | Allied World Insurance Surplus Lines Insurance Company, f/k/a Darwin Select Insurance Company | Allied World Specialty Insurance Company, f/k/a Darwin National Assurance Company |

33.    The Policy provides "follow-form" errors and omissions liability coverage to Cambia, which means that it provides excess-layer coverage to Cambia if the applicable underlying primary policy provides coverage. A copy of the primary E&O policy, issued by Allied World Surplus Lines Insurance Company, f/k/a Darwin Select Insurance Company ("Allied World"), is attached hereto as Exhibit F (the "Primary Policy").

34.    The Policy follows the coverage under the Primary Policy, which requires the insurer to pay "Loss which the Insured is legally obligated to pay as a result of a Claim that is first made against the Insured during the Policy Period." Primary Policy, § I (Ex. F at 45).

35.    "Loss" is defined to include "Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a Claim." Primary Policy, § IV.J, as amended by Endorsements 15 and 32 (Ex. F at 21, 41, 55).

36.    "Claim" is defined as "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act which took place on or after the retroactive date listen in ITEM 7 of the Declarations. In clarification and not in limitation of the foregoing, such notice may be in the form of an arbitration, mediation, judicial, declaratory or

injunctive proceeding. A claim will be deemed to be made when such written notice is first received by the Insured." Primary Policy, § IV.C (Ex. F at 54).

37. "Wrongful Act" is defined to mean, among other things, "any actual or alleged act, error or omission in the performance of, or any failure to perform, a Managed Care Activity by any Insured Entity or by any Insured Person acting with[in] the scope of his or her duties or capacity as such." Primary Policy, § IV.W (Ex. F at 56).

38. "Managed Care Activity" is defined to include a number of services or activities performed by or on behalf of the Insured, including, but not limited to: Provider Selection; Utilization Review; advertising, marketing, selling or enrollment for healthcare plans; Claims Services; and/or establishing health care provider networks. Primary Policy, § IV.K (Ex. F at 55).

39. "'Provider Selection' means any of the following, but only if performed by or on behalf of the Insured: evaluating, selecting, credentialing, contracting with or performing peer review of any provider of Medical Services." Primary Policy, § IV.P, as amended by End. 13 (Ex. F at 19, 56).

40. "'Utilization Review' means the process of evaluating the appropriateness, or necessity of Medical Services for purposes of determining whether payment or coverage for such Medical Services will be authorized or paid for under any health care plan, but only if performed by or on behalf of an Insured. In clarification and not in limitation of the foregoing, Utilization Review shall include prospective review of proposed payment or coverage for Medical Services, concurrent review of ongoing Medical Services, retrospective review of already rendered Medical Services or already incurred costs, disease management, and case management." Primary Policy, § IV.U, as amended by End. 13 (Ex. F at 19, 56).

41. "'Claims Services' means the following services, but only if performed by or on behalf of an Insured: the submission, handling, investigation, payment or adjustment of claims for benefits or coverages under health care or workers compensation plan." Primary Policy, § IV.D, as amended by End. 13 (Ex. F at 19, 54).

42. "'Defense Expenses' means reasonable legal fees and expenses incurred in the investigation, adjustment, defense or appeal of a Claim; provided that Defense Expenses shall not include remuneration, salaries, overhead, fees or benefit expenses of any Insured." Primary Policy, § IV.E (Ex. F at 54).

43. The Primary Policy also expressly provides coverage for "Antitrust Activity." Primary Policy, Declarations at Item 3(b) (Ex. F at 1).

44. "Antitrust Activity" is defined to include "any actual or alleged: price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law." Primary Policy, § IV.A (Ex. F at 54).

45. The Policy is triggered when the limit of underlying coverage has been exhausted. Policy, § I (Ex. E at 9).

46. The Policy provides that the full amount of the applicable limit of liability can be satisfied by payments made "by the issuer(s) of the Underlying Insurance, the Insured [Cambia] or by another party on behalf, or for the benefit, of the Insured or the issuer(s) of the Underlying Insurance." Policy § I(E) (Ex. E at 10).

47. Cambia paid a substantial premium to purchase the Policy, and Cambia has complied with all applicable terms and conditions of the Policy.

IV. **Cambia's Effort to Obtain Insurance Coverage from Atlantic Specialty**

48. The allegations of the Subscribers and Providers in the Antitrust Litigation fall squarely within the coverage afforded by the Policy.

49. Cambia provided timely notice of the Antitrust Litigation to all of its insurers, including Atlantic Specialty, and demanded Atlantic Specialty provide coverage for the Antitrust Litigation.

50. Atlantic Specialty did not issue a coverage position in response to Cambia's notice of the Antitrust Litigation.

51. Throughout the course of the Antitrust Litigation, Atlantic Specialty repeatedly requested extensive, irrelevant, and/or privileged information from Cambia, much of which Atlantic Specialty was not entitled to under the Policy.

52. Despite this, Cambia kept Atlantic Specialty apprised of the status of the Antitrust Litigation and provided Atlantic Specialty with substantial information and frequent status updates, including, but not limited to:

   a) Access to a secure portal housing several thousand documents, including written discovery requests and responses, a list of witnesses deposed, transcripts of depositions, deposition exhibits, motions, memorandum of law and supporting exhibits, and PowerPoint presentations;

   b) Atlantic Specialty and/or its counsel were invited to participate in over 35 meetings and/or teleconferences with defense counsel for the Blue Defendants;

   c) Certain meetings and/or teleconferences were also attended by the mediator overseeing the mediation between the Blue Defendants and the Subscribers, and Atlantic Specialty and its counsel were invited to ask questions directly of the mediator; and

   d) Cambia has provided information concerning settlement negotiations, including drafts of the Subscriber Track Settlement Agreement, and defense counsel has considered requests, comments, or concerns raised by Atlantic Specialty.

53. On October 9, 2018, Cambia and all of its other insurers providing both E&O and D&O coverage, except Atlantic Specialty, participated in a mediation session in an attempt to resolve the insurance coverage issues arising from the Antitrust Litigation.

54. Cambia was informed by its other insurers that Atlantic Specialty was not willing to mediate with Cambia.

COMPLAINT AND DEMAND FOR JURY TRIAL – 9

55. Counsel for Atlantic Specialty further advised that Atlantic Specialty would not participate in the mediation because it did not agree that any contribution made by Cambia to defense expenses or an indemnity payment could be used to reduce the limits of the underlying insurance.

56. On November 20, 2019, Cambia and its insurers, other than Atlantic Specialty, participated in a second mediation session.

57. Atlantic Specialty once again did not participate in the second mediation session between Cambia and its other insurers and provided no further explanation for its refusal to participate.

58. Through significant effort during both mediation sessions and discussions following those sessions, Cambia and all of its other insurers entered into a confidential settlement regarding the other insurers' obligations with respect to the Antitrust Litigation.

59. Thereafter, Cambia attempted to reach a settlement with Atlantic Specialty, but was ultimately unsuccessful.

60. The Subscriber Track Settlement includes a $2.67 billion settlement fund, which the Subscribers describe as being "one of the largest monetary recoveries ever achieved in an antitrust class action settlement."

61. The Subscriber Track Settlement was achieved only after five years of mediation with three mediators. Atlantic Specialty was informed of, and participated in, the mediation of the Antitrust Litigation.

62. The Subscribers describe the settlement as an historic resolution "that will reshape competition in the health insurance industry and offer increased choice to millions of Americans."

63. The changes to the Blue System will be monitored by a five-person committee for a period of five years from the time of final approval.

64. In addition to providing Atlantic Specialty with drafts and the final version of the proposed Subscriber Track Settlement Agreement, Cambia arranged a call between defense counsel

in the Antitrust Litigation and Cambia's insurers, including Atlantic Specialty, to allow the insurers to ask questions concerning the Subscriber Track Settlement. Thereafter, on August 21, 2020, Cambia requested that Atlantic Specialty consent, by August 28, 2020, to the terms of the Subscriber Track Settlement Agreement.

65. Atlantic Specialty did not provide its consent to the Subscriber Track Settlement Agreement by August 28, 2020 and instead sent a letter seeking extensive additional information and demanding an immediate response before Atlantic Specialty would respond to Cambia's request for consent.

66. Although Cambia provided responses to Atlantic Specialty's information requests, Atlantic Specialty still refused to provide its consent to the Settlement Agreement and, instead, on September 25, 2020, Atlantic Specialty agreed only that it would not raise lack of consent to the Settlement Agreement as a coverage defense.

67. On December 30, 2020, Cambia was required to, and did, make an initial payment into the Subscriber Track Settlement Fund.

## COUNT I
## DECLARATORY JUDGMENT

68. Cambia incorporates by reference the allegations of Paragraphs 1 through 67 of this Complaint and makes them a part hereof as if fully set forth at length herein.

69. A substantial premium has been paid to Atlantic Specialty for coverage under the Policy, and Cambia has at all times complied with all relevant provisions of the policy.

70. Atlantic Specialty contracted to be pay Loss, including Defense Expenses, incurred as a result of a Claim.

71. Under the Policy, Claim means "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act which took place on or after the retroactive date listen in ITEM 7 of the Declarations."

72. As explained above, a Wrongful Act is defined, in part, as "any actual or alleged act, error or omission in the performance of, or any failure to perform, a Managed Care Activity."

73. The complaints in the Antitrust Litigation contain numerous allegations that fall within the Policy's broad definition of a Managed Care Activity, triggering Atlantic Specialty's coverage obligations.[1]

74. Moreover, Atlantic Specialty's coverage for the Antitrust Litigation is triggered because the Policy follows form to a primary policy that expressly provides coverage for Antitrust Claims, and both the Subscriber and Provider plaintiffs allege various Antitrust Claims, including, but not limited to, violations of Section 1 and 2 of the Sherman Act.

75. Despite this, Atlantic Specialty refuses to commit to: (a) fund Cambia's defense of the Antitrust Litigation; and (b) pay any judgment or settlement arising from the Antitrust Litigation, including the Subscriber Track Settlement.

76. By reason of the foregoing, an actual and justiciable controversy exists between Cambia and Atlantic Specialty regarding their rights and obligations under the Policy.

77. The rights, status and other legal obligations of Cambia and Atlantic Specialty remain uncertain and insecure, and this Court's entry of declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

78. Cambia respectfully requests that this Court issue a declaration that:

   a) under the terms of the Policy, Atlantic Specialty has a duty to pay on behalf of Cambia defense and indemnity arising from the Antitrust Litigation within the limits of the Policy and in excess of underlying limits;

   b) under the terms of the Policy, Atlantic Specialty has a duty to indemnify and reimburse Cambia for the attorney fees, expenses, and costs Cambia will incur in defense of the Antitrust Litigation;

---

[1] By way of example only, both the Provider plaintiffs and the Subscriber plaintiffs allege the use of "most favored nation" provisions between the Blue Plans constitutes anticompetitive behavior. *See* Subscriber Track Fourth Amended Consolidated Class Action Complaint, Ex. C at ¶ 513, and Fourth Amended Provider Complaint, Ex. D at ¶ 363. These allegations fall squarely within the Policy's definition of Managed Care Activity, which includes, among other things, Provider Selection, Utilization Review, and establishing health care provider networks.

    c) Atlantic Specialty must reimburse Cambia for the attorney fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action pursuant to ORS 742.061;

    d) Atlantic Specialty must pay Cambia pre- and post-judgment interest owed pursuant to pursuant to ORS 82.010; and

    e) such other relief as the Court deems appropriate.

### COUNT II
### BREACH OF CONTRACT

79. Cambia incorporates by reference the allegations of Paragraphs 1 through 77 of this Complaint and makes them a part hereof as if fully set forth at length herein.

80. Atlantic Specialty contracted to pay Loss incurred in connection with a Claim.

81. Cambia has incurred, and continues to incur, Loss in the defense and resolution of the Antitrust Litigation.

82. Cambia has fully performed any and all conditions required by the Policy, or such conditions have been waived by Atlantic Specialty.

83. Cambia timely made a demand on Atlantic Specialty to acknowledge its obligations under the Policy and commit to funding a portion of the Subscriber Track Settlement.

84. Atlantic Specialty refuses to acknowledge its obligation to fund Cambia's defense and resolution of the Antitrust Litigation.

85. Despite Atlantic Specialty's refusal to participate in a mediation session with Cambia and its other insurers, Cambia has settled its claims for coverage for the Antitrust Litigation with each of those other insurers. It is only Atlantic Specialty that has forced Cambia to institute coverage litigation.

86. Thereafter, Cambia timely made a demand on Atlantic Specialty to provide its consent to the settlement of the Subscriber Track.

87. Atlantic Specialty, however, unreasonably withheld its consent to Cambia's participation in a settlement of the Subscriber Track of the Antitrust Litigation.

88. Atlantic Specialty has breached its obligations under the Policy, depriving Cambia of the benefit of the insurance protection for which a substantial premium has been paid.

89. Atlantic Specialty's breach of the Policy has proximately caused damages to Cambia in an amount to be determined at trial.

90. Under ORS 742.061, Cambia is entitled to recover its reasonable attorney fees from Atlantic Specialty incurred in pursing this insurance-coverage litigation.

## COUNT III
## ANTICIPATORY REPUDIATION OF CONTRACT

91. Cambia incorporates by reference the allegations of Paragraphs 1 through 87 of this Complaint and makes them a part hereof as if fully set forth at length herein.

92. Atlantic Specialty contracted to pay Loss incurred in connection with a Claim.

93. Cambia has incurred, and continues to incur, Loss in the defense of the Antitrust Litigation.

94. Cambia has fully performed any and all conditions required by the Policy.

95. Cambia timely made a demand on Atlantic Specialty to acknowledge its obligations under the Policy.

96. Atlantic Specialty refuses to acknowledge and repudiates its obligation to fund Cambia's defense and resolution of the Antitrust Litigation.

97. Moreover, Cambia has settled its claims for coverage for the Antitrust Litigation with all of its other insurers.

98. Atlantic Specialty, however, refused to participate in mediation sessions with Cambia and its other insurers.

99. Although Atlantic Specialty subsequently agreed to participate in a separate mediation with Cambia, the parties made little progress towards resolving their disputes and Atlantic Specialty's refusal to acknowledge its coverage obligations continues.

100. Atlantic Specialty has anticipatorily repudiated its obligations under the Policy, depriving Cambia of the benefit of the insurance protection for which substantial premiums have been paid.

101. Under ORS 742.061, Cambia is entitled to recover its reasonable attorney fees from Atlantic Specialty incurred in pursing this insurance-coverage litigation.

102. Atlantic Specialty's anticipatory repudiation of the Policy has proximately caused damages to Cambia in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

103. Cambia incorporates by reference the allegations of Paragraphs 1 through 99 of this Complaint and makes them a part hereof as if fully set forth at length herein.

104. Atlantic Specialty contracted to pay Loss incurred in connection with a Claim; therefore, Atlantic Specialty owes a duty of good faith and fair dealing to Cambia.

105. Cambia has incurred, and continues to incur, Loss in the defense and resolution of the Antitrust Litigation.

106. Cambia has fully performed any and all conditions required by the Policy.

107. Cambia timely made a demand on Atlantic Specialty to acknowledge its obligations under the Policy and commit to funding a portion of the Settlement Agreement.

108. Atlantic Specialty frivolously and without reason refuses to acknowledge its obligation to fund Cambia's defense and resolution of the Antitrust Litigation.

109. Atlantic Specialty has not dealt with Cambia on a fair and frank basis and has not at all times discharged its duties in good faith.

110. Atlantic Specialty, in its claims handling practices, and particularly through its burdensome and unnecessary information requests, has not afforded Cambia's interests the same consideration as its own.

111. Moreover, Atlantic Specialty has not evaluated the Antitrust Litigation or its obligations under the Policy in an honest, intelligent, and objective manner, even though Cambia's

claim for coverage for the Antitrust Litigation is not fairly debatable. The Antitrust Litigation falls within the Policy's broad definition of Managed Care Activity and express coverage for Antitrust Activity, and no exclusions apply.

112.　Atlantic Specialty delayed in responding to Cambia's request to consent to the Subscriber Track Settlement, and ultimately refused to consent, thereby creating uncertainty as to how Cambia's share of that settlement is to be funded.

113.　In an effort to fabricate a claim that Cambia has breached its obligations under the Policy, Atlantic Specialty continued to make repeated demands for irrelevant, burdensome and/or privileged information to which it is not entitled. Atlantic Specialty has failed to clearly explain the nature of its repeated, burdensome and extensive information requests and the reasons why such information is necessary to its evaluation of coverage.

114.　Moreover, Atlantic Specialty continually sought further and additional information, despite being provided with access to all the information reasonably required to make payment under the Policy, including thousands of pages of documents, numerous meetings and teleconferences with defense counsel, and access to mediation sessions and court conferences, in an effort to delay and/or avoid payment.

115.　Atlantic Specialty has also failed to acknowledge and act promptly upon communications with respect to claims, including, but not limited to, Cambia's request for consent to the Subscriber Track Settlement Agreement.

116.　Atlantic Specialty has breached its obligations under the Policy, depriving Cambia of the benefit of the insurance protection for which substantial premiums have been paid.

117.　Atlantic Specialty's words and conduct demonstrate that it has no intention of providing coverage for the Antitrust Litigation and has anticipatorily repudiated its obligations under the Policy.

118.　Atlantic Specialty has engaged in unfair claim settlement practices in violation of ORS 746.230, including, without limitation, by misrepresenting facts in settling the claim; failing to acknowledge and act promptly upon communications relating to the claim; failing to adopt

and implement reasonable standards for the prompt investigation of the claim; refusing to pay the claim without conducting a reasonable investigation; not attempting, in good faith, to promptly and equitably settle the claim in which liability has become reasonably clear; and compelling Cambia to initiate litigation to recover amounts due.

119. Atlantic Specialty's breach of duties of good faith and fair dealing have proximately caused damages to Cambia in an amount to be determined at trail.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Cambia prays for judgment against Atlantic Specialty, as follows:

1) On Count I – Declaratory Judgment, that this Court issue a declaration that:

   a) under the terms of the Policy, Atlantic Specialty has a duty to pay on behalf of Cambia defense and indemnity arising from the Antitrust Litigation within the limits of the Policy and in excess of underlying limits;

   b) under the terms of the Policy, Atlantic Specialty has a duty to indemnify and reimburse Cambia for the attorney fees, expenses, and costs Cambia has incurred and will incur in defense of the Antitrust Litigation;

   c) Atlantic Specialty must reimburse Cambia for attorney fees, expenses and costs that Cambia has incurred and will incur in bringing this insurance coverage action pursuant to ORS 742.061;

   d) Atlantic Specialty must pay Cambia pre-judgment and post-judgment interest owed pursuant to pursuant to ORS 82.010; and

   e) such other relief as the Court deems appropriate.

2) On Count II – Breach of Contract, for judgment in Cambia's favor and against Atlantic Specialty:

   a) that the Policy provides coverage for the Antitrust Litigation;

  b)  for money damages in an amount to be determined at trial, not limited to the Policy liability limits, including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest, arising from Atlantic Specialty's breach of the Policy;

  c)  for costs of suit;

  d)  for attorney fees pursuant to ORS 742.061;

  e)  for pre- and post-judgment interest pursuant to ORS 82.010; and

  f)  for such further relief the Court may deem just and proper.

3) On Count III – Anticipatory Repudiation of Contract, for judgment in Cambia's favor against Atlantic Specialty:

  a)  that the Policy provides coverage for the Antitrust Litigation;

  b)  for money damages in an amount to be determined at trial, not limited to the Policy liability limits, including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest, arising from Atlantic Specialty's anticipatory repudiation of the Policy;

  c)  for costs of suit;

  d)  for attorney fees pursuant to ORS 742.061;

  e)  for pre- and post-judgment interest pursuant to ORS 82.010; and

  f)  for such further relief the Court may deem just and proper.

4) On Count IV –Breach of the Implied Covenant of Good Faith and Fair Dealing, for judgment in Cambia's favor against Atlantic Specialty:

  a)  that the Policy provides coverage for the Antitrust Litigation;

  b)  for money damages in an amount to be determined at trial, not limited to the Policy liability limits, including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest, arising from Atlantic Specialty's breach of its duties;

  c)  for costs of suit;

    d)    for attorney fees pursuant to ORS 742.061;

    e)    for pre- and post-judgment interest pursuant to ORS 82.010; and

    f)    for such further relief the Court may deem just and proper.

Dated: May 3, 2021

s/ James T. McDermott  
James T. McDermott, OSB 93359  
Dwain M. Clifford, OSB 025074  
Attorneys for Plaintiffs